297 U.S. 547 (1936)
WISCONSIN
v.
MICHIGAN.
No. 12, original.
Supreme Court of United States.
Argued March 2, 3, 1936.
Decided March 16, 1936.
Mr. Adolph J. Bieberstein, with whom Mr. James E. Finnegan, Attorney General of Wisconsin, Mr. Joseph G. Hirschberg, Deputy Attorney General, and Mr. J.E. Messerschmidt, Assistant Attorney General, were on the brief, for plaintiff.
Mr. Edward A. Bilitzke, with whom Mr. David H. Crowley, Attorney General of Michigan, and Mr. James F. Shepherd, Deputy Attorney General, were on the brief, for defendant.

DECREE.
Michigan brought suit in this court against Wisconsin to have ascertained and established a part of the boundary between them. March 1, 1926, we announced our decision. 270 U.S. 295. To carry it into effect, the States acting through their counsel agreed upon and submitted a form of decree. November 22, 1926, the court relying *548 upon the agreement and consent of the parties entered the decree proposed. 272 U.S. 398.
November 7, 1932, Wisconsin brought this suit against Michigan, alleging that as a result of mistakes of the parties the decree of November 22, 1926, did not carry our decision into effect as to the tracts called "Grassy Island" and "Sugar Island" on the north bank and a short distance from the mouth of the Menominee River and as to the Green bay section of the boundary. Issue was joined, and a special master took evidence, heard counsel for the States, made findings of fact, stated his conclusions of law and recommended a form of decree. The parties filed exceptions to his report and, after hearing counsel, the court May 20, 1935, decided (295 U.S. 455, 462):
"The decree to be entered in this case will establish the boundary through and along, or near, the middle of the waters of Green bay that are here involved. That line commences at a point midway between the piers at the harbor entrance of the Menominee River; thence east by south seven and one-eighth miles; thence approximately north by east one-eighth east, about eight and seven-eighths miles; thence to and along a line in or near the middle of the bay to a point west of the Rock Island passage; thence easterly by courses and distances to be designated through that passage to the boundary in the middle of Lake Michigan. The decree will appropriately define the tracts called `Grassy Island' and `Sugar Island' and declare them to belong to Michigan."
And the court ordered (p. 463):
"The case is referred to the special master, and he is directed to prepare and submit to the court a form of decree which will give effect to this decision. Inasmuch as the preparation of the decree may involve the ascertainment of physical facts and the formulation of technical descriptions, the master is authorized to hear counsel, take evidence and procure such assistance, if any, as may be *549 necessary to enable him conveniently and promptly to discharge the duties here imposed upon him. He may call upon counsel to propose forms of decree. He is directed to give them opportunity to submit objections to the form prepared by him and to include the objections, if any, in his report."
The master took evidence, viewed the locus, heard counsel and in accordance with the court's directions filed his report. It includes a form of decree. Wisconsin objects to the proposed decree in respect of the part of the boundary in Green bay, Rock Island passage and Lake Michigan not defined by our decision of May 20, 1935, and submits for consideration alternative forms of decree. Michigan urges adoption of that proposed by the master.
After hearing counsel for the respective States, the court does hereby order, adjudge and decree:
1. Wisconsin's objections are overruled. The definitions of the boundary recommended by the master are approved and adopted.
2. The decree of this court, entered November 22, 1926, in the suit brought by Michigan against Wisconsin, is modified by striking therefrom the provisions that purport to define the parts of the boundary in the Menominee River downstream from the concrete bridge on United States Highway No. 41 between the cities of Menominee Michigan, and Marinette, Wisconsin, and in the waters of Green bay, the Rock Island passage and Lake Michigan and by inserting in lieu of the parts of the decree so stricken out, definitions of the boundary recommended by the master.
3. The decree in Michigan v. Wisconsin, as modified by this decree, defines and establishes the boundary between these States. As modified, it is as follows:
It is ordered, adjudged and decreed:
That the boundary between the States of Michigan and Wisconsin along the following course be and it is hereby fixed and finally established as follows:
*550 From Lake Superior through the middle of the main channel of the Montreal River, to the headwaters thereof, as established in the survey of Captain Cram at the junction of the Pine River and Balsam Creek (also known as Lehman's Creek), thence along the line of the survey of William A. Burt of 1847, to the center of the channel between Middle and South Islands in the Lake of the Desert, thence continuing along the line of said survey to the shore of Lake Brule, thence along the southerly shore of Lake Brule to the center of the main channel of the River Brule, thence down the center of the main channel of the rivers Brule and Menominee, to the intersection of the longitudinal center line of the concrete bridge on United States Highway No. 41 between the cities of Menominee, Michigan, and Marinette, Wisconsin, with the center line of the stream crossing of said bridge, which said point of intersection bears north forty-two degrees and thirty minutes (42° 30') east, a distance of four hundred twenty-four and five-tenths (424.5) feet from the southerly end of said stream crossing of said bridge, and a distance of nine hundred and ninety-nine and ninety-three hundredths (999.93) feet upon the same course from the center line of Eggner street as now laid out and existing in the city of Marinette, Wisconsin, and which said point also bears south forty-two degrees and thirty minutes (42° 30') west, two thousand three hundred fifty-eight and one-tenth (2,358.1) feet from the south line of Ogden avenue as now laid out and existing in the city of Menominee, Michigan, all these courses being measured along the center line of said bridge and its approaches, thence south seventy-four degrees and twenty-eight minutes (74° 28') east, one thousand one hundred twenty-seven and seven-tenths (1,127.7) feet to a point from which a monument set upon a nearby island consisting of an iron pin set in a concrete block of approximately *551 one-half ton bears south eighteen degrees and fifty-five minutes (18° 55') west, a distance of seventy-one (71) feet, thence south sixty-six degrees and fifty-four minutes (66° 54') east, one thousand seven hundred thirty-nine and three-tenths (1,739.3) feet to a point from which a monument set in a nearby island consisting of an iron pin set in a concrete block of approximately one-half ton bears south nineteen degrees and thirty minutes (19° 30') west, one hundred sixty and two-tenths (160.2) feet, thence along the center line of the dredged channel of the Menominee River through the center of the movable span of the drawbridge between the cities of Menominee and Marinette, and continuing along the center of said dredged channel of said river to a point midway between the outer ends of the Menominee Harbor piers. Provided, that the section of the boundary in the Brule and Menominee rivers shall follow the main channel thereof, except that where islands occur in the Brule River or in the Menominee River, down to and inclusive of the Quinnesec Falls, extending to the line between sections 5 and 6, Township 38 north, of Range 20 east, of the Wisconsin Public Survey, extended across said river, the line shall pass through the channel nearest the Wisconsin bank, so as to throw all such islands into Michigan; and where islands occur in the Menominee River below the Quinnesec Falls, and upstream from the above-mentioned concrete bridge on United States Highway No. 41, the line shall pass through the channel nearest the Michigan bank, so as to throw all such islands into Wisconsin.
From a point midway between the outer ends of the Menominee Harbor piers, thence upon a true course of which the azimuth is one hundred one degrees and fifteen minutes (101° 15') for eleven thousand four hundred seventy (11,470) meters, the same being approximately east by south for seven and one-eighth (7 1/8) miles.
*552 Thence upon a true course of which the azimuth is eleven degrees and forty-five minutes (11° 45') for fourteen thousand two hundred fifty (14,250) meters, the same being approximately north by east for eight and seven-eighths (8 7/8) miles.
Thence upon a true course of which the azimuth is fifty-eight degrees and fifty minutes (58° 50') for eight thousand two hundred ninety (8,290) meters, the same being approximately northeast by east one-fourth east for five and one-eighth (5 1/8) miles.
Thence upon a true course of which the azimuth is forty-two degrees and eighteen minutes (42° 18') for sixteen thousand seven hundred eighty (16,780) meters, the same being approximately northeast one-fourth north for ten and one-half (10 1/2) miles.
Thence upon a true course of which the azimuth is twenty-eight degrees and ten minutes (28° 10') for eleven thousand five hundred eighty (11,580) meters, the same being approximately north northeast one-half east for seven and one-fourth (7 1/4) miles.
Thence upon a true course of which the azimuth is ninety degrees (90°) for twenty-seven thousand one hundred seventy (27,170) meters, the same being approximately east for sixteen and seven-eighths (16 7/8) miles.
Thence upon a true course of which the azimuth is one hundred twenty degrees (120°) for forty-five thousand six hundred (45,600) meters, the same being approximately southeast by east three-eighths east for twenty-eight and three-eighths (28 3/8) miles to the center of Lake Michigan.
In the descriptions contained in this decree, all azimuths are computed from 0 as true north, clockwise.
The costs of this action, including the fees and expenses incurred by the special master, shall be divided equally between the parties.